Our next case for argument is United States v. Redman Good morning your... Mr. Martins Good morning your honors and may it please the court, my name is Daniel Pulliam and I represent the appellate defendant Scott Redman Oh I'm sorry, Mr. Martins will be arguing the next case. Mr. Pulliam, my apologies The district court in this case improperly applied the sophisticated means enhancement to Mr. Redman's convictions for wire fraud and false statements to conduct that the government described to the jury in closing arguments as simple and fraud 101 The district court further improperly applied the risk of substantial bodily harm or death enhancement to conduct that the district court could only speculate caused any risk of harm The evidence does not show what risk of harm, if any, was suffered other than the understandable discomfort of the patients that they were prescribed drugs by someone who lacked the requisite qualifications Are you suggesting that risk of harm needs to be equated with actual harm? No your honor, the analysis for this enhancement is a risk analysis And in a case like this where there was no evidence that anyone suffered actual bodily harm, there needs to be some sort of analysis beyond basic intuition that the actions of the defendant here caused that risk of harm to be elevated If you look at the evidence, it shows that Mr. Redman saw patients who generally had pre-existing diagnoses, he was supervised by someone at the clinic who testified that he generally performed as one would expect someone out of medical school to perform So is it your position that someone who goes to medical school and undergoes a residency and gets certified to be a physician able to prescribe medication is not more likely to be safe? Someone like your client who didn't go through that whole process doesn't pose any risk because that training doesn't lower in any way the risk that someone would prescribe medication in a way that would pose a risk of substantial injury to the patient A properly trained physician would pose a lower risk of harm than someone who lacks the formal training, but in this case that risk of harm did not rise to the level of substantial bodily harm Why? Are these drugs not dangerous? Do they not have all the warnings that the FDA requires on the bottles? The drugs are dangerous and they are controlled for a reason, but that doesn't mean that prescribing controlled substances to people who generally have pre-existing conditions with the supervision of another doctor for a limited period of time of two months rises to that level of risk of substantial bodily harm Substantial bodily harm as defined in the notes is surgery, it's not a discomfort and a knowledge that someone without qualifications Giving someone so much over what their weight could handle or a drug that interacted poorly with another drug that they may be taking, it's your position that that could never put someone in the hospital or even potentially cause death? Yes, absolutely it could, but in this case I don't think there's evidence that anyone was over-prescribed So that goes back to the question of whether you're looking for actual harm rather than substantial risk of harm The fact that his patients, with the exception of one, testified that the diagnoses that he made were either pre-existing and he continued the diagnosis and thus prescribed drugs that were deemed by the doctor to be appropriate Doesn't lead to the conclusion that it was necessarily the risk of substantial bodily harm On sophisticated means, evidence shows that the documents that Mr. Redman obtained off the internet were surprisingly easy to obtain Fakeid.com, degreepackage.com, he only went to one source for the package of degrees he needed, it was surprisingly easy The same for the DEA registration number, he went online on a Friday night and put in the information that he also relatively easily obtained and Monday morning he had his DEA number Opened a bank account in the name of his alias too? Yes, using the same relatively easily obtained identification documents, fake ID, wasn't hard after that, and it's surprisingly easy I mean the fake ID, he did take a step towards accomplishing that by taking a selfie photograph, likely with his iPhone, submitted it online, had a fake ID in the mail I don't think that that conduct, which is in sophisticated means, is the conduct that he performed, rises to the level of being sophisticated As for his conduct as a physician, there's some intuitive appeal there too, that someone's being a doctor, that's got to be sophisticated Well in this case, he never had to do much other than put on the requisite attire of a physician and bear the qualifications He didn't ever accomplish what he may have intended to, what he said he was trying to do was get actual degrees on the wall He never had actual degrees posted in his office where he saw patients He showed up at a cocktail party with a vendor of sorts, a group of doctors, and he was able to pull it off That may have seemed easy, but bold and audacious doesn't necessarily mean sophisticated Because the district court clearly erred in applying the sophisticated means enhancement and the conscious or reckless disregard of death or serious bodily injury enhancement to Mr. Redman's offense level calculation for wire fraud and false statement convictions The court should vacate his sentence and remand for resentencing Unless there are further questions, I reserve the balance of my time Thank you Mr. Pulliam Ms. Durek May it please the court, Katie Durek on behalf of the United States The district court did not clearly err in increasing the defendant's offense level by two levels for the use of sophisticated means Where the evidence in this case showed that the defendant used an alias, created a whole host of fake documents Lied his way into a psychiatry position at a medical clinic, treated patients, and prescribed them actual controlled substances All while not making it past the 11th grade In enhancing the defendant's sentence based on the use of sophisticated means The district court rightly focused on the substantial amount of fake documents that the defendant procured to perpetrate the fraud It wasn't just one document, it wasn't just two documents This court looks at the whole scheme And here the district court's findings were further supported by the record He procured a curriculum vitae, an email account He opened a bank account in his alias He created a false and doctored medical school diploma, residency certificate, driver's license Social security card, Illinois medical and controlled substance licenses The list goes on and on to create this portrait of a real doctor Then he did all of the things that a doctor would do once he actually got inside the doors of this clinic He treated patients, he administered diagnostic tests He checked the Illinois prescription monitoring program, issued prescriptions This was all sophisticated And the application that the district court used here in applying this enhancement was correct And certainly the district court did not clearly err Moving on to the second issue Also the district court did not clearly err in increasing the defendant's offense level by two Because the offense involved the conscious or reckless risk of death or serious bodily injury Here the district court rightly noted that this defendant did not possess the proper training Education or credentials to serve as a psychiatrist Again this was supported by the PSR that said that he did not finish high school The district court also noted correctly that these patients were suffering from serious psychiatric disorders And that was on display at the four day trial in this case where patients testified And then went on to say that prescribing these controlled substances created a risk of serious bodily injury or death And this was supported by a multitude of things but I want to point to one specific example And that's the real doctor in this case, the name that the defendant stole Dr. Julian Lopez Garcia not only testified at trial But he also wrote a letter to the district court in anticipation of sentencing The government read that letter into the record at the sentencing hearing And there Dr. Lopez opined of the complicated process it is to prescribe controlled substances That a doctor must take into account that patient's other medications that they might be taking Their risk profile, their personal preferences Whether they drink alcohol for example is maybe an important consideration And what Dr. Lopez said was it's a complex process and if it's done incorrectly It can even cause a patient's demise and that's what the district court parroted in sentencing And also the district court noted that the risk that the errors in psychiatric treatment Could have led patients to harm themselves or others and I think that's an important consideration here That these were serious psychiatric conditions and this defendant was in no way qualified To make clinical assessments of the risk to themselves or others So for all of these reasons and all of the reasons stated in the government's brief The government respectfully requests that you affirm the defendant's sentence Thank you counsel. Anything further Mr. Pulliam? Yes your honor Your honor fraud by its nature is deceitful and involves covering up And in this case you have identity theft so you already start with the fact that he's going to create Fake documents and put himself out there as someone he's not To apply the sophisticated means enhancement you have to have something more than that And here there was little more than what was necessary to establish the basic conviction As for sophisticated means it's a risk analysis that needs something more than the intuition That someone's prescribing drugs that are dangerous but in this case they were prescribed By someone who was under the supervision of another doctor To patients who generally had pre-existing conditions And in a manner that generally showed they were not incorrect Yes a real doctor might have done something differently in each individual case But as a general matter the evidence shows that the patients received drugs That were not inappropriate for the diagnoses that were generally With the exception of one case seem to be appropriate So unless there are further questions Thank you very much Mr. Pulliam we appreciate your willingness and that of your law firm To accept the appointment in this case And the assistance you've provided to the court as well as your client Thank you your honor The case is taken under advisement